UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

Case No. 21-20414

Honorable Nancy G. Edmunds

v.

OSCAR BERNADINE CASARES,

        Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE [19]**

Defendant Oscar Bernadine Casares is charged in this matter in a two-count indictment with conspiracy to possess with intent to distribute controlled substances in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(ii) (Count I) and possession with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii) (Count II). (ECF No. 7.) The matter is before the Court on Defendant's motion to suppress evidence obtained by law enforcement during a traffic stop and subsequent search of his vehicle. (ECF No. 19.) The government opposes the motion. (ECF No. 24.) The Court held an evidentiary hearing on October 12, 2022.[1] Defendant filed a supplemental brief supporting his motion following the hearing. (ECF No. 47.) For the reasons below, the Court DENIES Defendant's motion to suppress evidence.

---

[1] The evidentiary hearing was previously scheduled for August 1, 2022. (ECF No. 30.) A few days prior to that date, Defendant filed an emergency motion to adjourn the hearing (ECF No. 32) and a motion to compel discovery of narcotics canine records (ECF No. 33). The Court granted the former and granted in part the latter, giving Defendant additional time and materials to prepare for the hearing.

1

**I.     Factual Background**

During the evidentiary hearing, the Court heard detailed testimony from FBI Special Agent Brandon Massey, Michigan State Police Trooper Ben Sonstrom, and Michigan State Police Sergeant David Yount. The Court found the witnesses credible and fully credits the testimony provided. The following summary of the facts is supported by that testimony and the exhibits submitted by the government.

The underlying stop and search took place on June 9, 2021. At the time, Defendant was on pre-trial release in connection with case no. 21-20096, also pending before this Court, in which he faces a charge of conspiracy with intent to distribute a controlled substance, and he was on state parole in connection with a conviction for assault with the intent to commit murder. FBI Agent Massey testified that prior to that date, he received information from a confidential source indicating that Defendant was selling kilos of heroin. As a result, he obtained warrants to conduct electronic surveillance of Defendant's cell phone and vehicle and arranged for a controlled buy in early June 2021. The one hundred grams of narcotics obtained from Defendant as a result of that buy were field tested and came back positive for heroin. The FBI then made arrangements to order one kilogram of heroin from Defendant and to have the Michigan State Police stop him on the way to the meeting place. Trooper Sonstrom was informed of this plan.

At approximately three o'clock in the afternoon on June 9, 2021, Defendant's vehicle was stopped. Trooper Sonstrom testified that one reason he made the stop was because Defendant's Ohio license plate was obscured by a plate holder. Trooper Sonstrom explained this to Defendant, requested his license and registration, and asked

him to step out of the vehicle to show him the obscured license plate. Defendant initially told the troopers that he was going home from work but when confronted with the fact that his work and residence were not close by, he changed his response to indicate that he was going to meet somebody. Defendant acknowledged that he was on both state parole and federal bond and told troopers that he was not responsible for the items in the vehicle. Trooper Sonstrom testified that Defendant was nervous when responding to the questions posed. Defendant declined to consent to a search of his vehicle despite being informed that his parole status provided for suspicionless searches, so Trooper Sonstrom eventually placed Defendant in handcuffs and subjected the vehicle to a canine sniff search. When the canine made a positive alert for narcotics, the vehicle was searched, and one kilo of heroin was found.

## II.     Analysis

Defendant takes issue with the fact that the state police officers who stopped him were working in conjunction with federal law enforcement and were privy to certain information prior to the stop. He also argues that he did not commit a traffic offense justifying the stop; even if the original stop was justified, he was detained longer than permitted under the Fourth Amendment; and the canine sniff search was unreliable. The government responds by arguing that the traffic stop based on Defendant's plate violation and the subsequent search were reasonable and there was independent probable cause to stop and search the vehicle based on the collective knowledge that Defendant was headed to a narcotics sale.

First, the Court finds Defendant's argument regarding the stop being a pretext for the narcotics investigation unavailing. It is well established that officers' underlying

motivations are irrelevant as to whether there is probable cause for a stop or search. *See Whren v. United States*, 517 U.S. 806, 812-13 (1996). And a police officer may stop a vehicle if there is "probable cause of a civil infraction or reasonable suspicion of criminal activity." *United States v. Lyons*, 687 F.3d 754, 763 (6th Cir. 2012). Here, Trooper Sonstrom testified that Defendant's license plate was obscured. Driving with a license plate that is obscured or partially obscured is a violation of Mich. Comp. Laws § 257.225. Thus, there was probable cause to believe Defendant had committed a civil infraction.

Because the traffic stop itself was valid, it was permissible for Trooper Sonstrom to ask Defendant questions, such as where he was going and who owned the vehicle. *See Lyons*, 687 F.3d at 770 ("Questions relating to travel plans, the driver's authority to operate the vehicle, or the safety of the officer are the sorts of classic context-framing questions directed at the driver's conduct at the time of the stop that rarely offend our Fourth Amendment jurisprudence.") (internal quotations and citations omitted). And Trooper Sonstrom testified as to sufficient "specific and articulable facts," such as Defendant's nervousness when answering those questions and his inconsistent responses, that provided "a particularized and objective basis for suspecting" criminal activity. *See id.* at 763 (describing reasonable suspicion as "a likelihood of criminal activity less than probable cause" but "more than a mere hunch") (internal quotations and citations omitted). Thus, there was no Fourth Amendment violation when law enforcement extended the traffic stop and subjected the vehicle to a dog sniff search.

As a general matter, "an alert by a properly trained and reliable drug-detection dog is sufficient to establish probable cause for the presence of a controlled substance." *United States v. Winters*, 782 F.3d 289, 304 (6th Cir. 2015). With regard to the reliability

4

of a sniff search, the Supreme Court has noted that "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Florida v. Harris*, 568 U.S. 237, 246 (2013). Both Trooper Sonstrom and Sergeant Yount testified at length regarding the training received by the canine, Nero, who sniffed the exterior of Defendant's vehicle. This consisted in part of his completion, along with his handler, Trooper Sonstrom, of the "2018 Replacement Canine School" conducted by the Michigan State Police Canine Unit, which involved "400 hours of Tracking, Building Search, Evidence Search, Area Search, Controlled Aggression, Obedience and Narcotics Detection" training. (Gov't Exhibit F.) Nero also went through additional trainings on a daily or monthly basis and recertifications every year. (Gov't Exhibits G-M.) Thus, the Court finds there was sufficient reason to trust Nero's alert.

Defendant also takes issue with the fact that Nero did not sit to alert Trooper Sonstrom to the presence of narcotics in Defendant's vehicle as he had done previously during training. But Trooper Sonstrom testified as to the head snaps and other behavioral changes exhibited by Nero that constituted a positive indicator for narcotics. Sergeant Yount's testimony confirmed this as well. Thus, Nero's positive alert provided probable cause to search the vehicle. This is in addition to the specific terms of Defendant's state parole, which allowed suspicionless searches of his person or property. (Gov't Exhibit E.) Trooper Sonstrom was aware of Defendant's parole status and even explained this to Defendant when asking for his consent to search the vehicle.

And, finally, the testimony provided by both Agent Massey and Trooper Sonstrom leads to a finding that Defendant's vehicle was also stopped and searched based on law enforcement's collective knowledge that Defendant was headed to a narcotics sale.

Thus, the collective knowledge doctrine applies, *see Lyons*, 687 F.3d at 765-66, and the stop and search were valid for this reason as well. In sum, there was no violation of Defendant's Fourth Amendment rights.[2]

### III. Conclusion

For the reasons set forth above, Defendant's motion to suppress evidence is DENIED.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: October 29, 2022

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 29, 2022, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager

---

[2] In his motion, Defendant makes a cursory reference to the issue of whether he was advised of his *Miranda* rights. In his supplemental brief, he argues that he should have been read his rights prior to any questioning. The requirement to give *Miranda* warnings, however, is triggered only by a custodial interrogation. *United States v. Woods*, 711 F.3d 737, 740 (6th Cir. 2013). "[T]he temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop does not constitute *Miranda* custody." *Maryland v. Shatzer*, 559 U.S. 98, 113 (2010) (citations omitted). Thus, Defendant is not entitled to relief under *Miranda*.